CLOSED

# U.S. District Court
## Eastern District of Virginia − (Alexandria)
## CRIMINAL DOCKET FOR CASE #:  1:12−cr−00521−LO−1

Case title: USA v. Dixon

Date Filed: 12/13/2012
Date Terminated: 09/06/2013

Assigned to: District Judge Liam O'Grady

**Defendant (1)**

**Chad Dixon**
*TERMINATED: 09/06/2013*

represented by **Nina J. Ginsberg**
DiMuro Ginsberg PC
1101 King Street
Suite 610
Alexandria, VA 22314−2956
(703) 684−4333
Fax: 703−548−3181
Email: nginsberg@dimuro.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1343 and 2 − Wire Fraud (including Forfeiture)(In or around 2012) (1) | BOP for 8 Months as to each of Counts 1 and 2, to run concurrently; 3 Years Supervised Release on each of Counts 1 and 2, to run concurrently; $200 special assessment ($100 on each count) |
| 18:1505 and 2 − Obstruction of an Agency Proceeding (April 18, 2012) (2) | BOP for 8 Months as to each of Counts 1 and 2, to run concurrently; 3 Years Supervised Release on each of Counts 1 and 2, to run concurrently; $200 special assessment ($100 on each count) |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Uzo Asonye** |
| | | US Attorney's Office (Alexandria−NA) |
| | | 2100 Jamieson Avenue |
| | | Alexandria, VA 22314 |
| | | **NA** |
| | | 702−299−3700 |
| | | Email: uzo.asonye@usdoj.gov |
| | | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 12/13/2012 | | | Set Hearing as to Chad Dixon: Plea Agreement Hearing set for 12/17/2012 at 10:00 AM in Alexandria Courtroom 700 before District Judge Liam O'Grady. (dper) (Entered: 12/13/2012) |
| 12/17/2012 | 4 | 5 | CRIMINAL INFORMATION as to Chad Dixon (1) counts 1 and 2. (dper) (Entered: 12/18/2012) |
| 12/17/2012 | 5 | | Minute Entry for proceedings held before District Judge Liam O'Grady: Initial Appearance and Plea Agreement Hearing as to Chad Dixon held on 12/17/2012. USA appeared through: Uzo Asonye. Defendant appeared with: Nina Ginsberg. Defendant was formally arraigned and entered a Plea of Guilty to Counts 1 and 2 (including Forfeiture) of the Criminal Information. Court accepts plea. Referred to PO for PSI and Sentencing set for 3/22/2013 at 09:00 AM in Alexandria Courtroom 700 before District Judge Liam O'Grady. Defendant released on $50,000 PR bond w/no special conditions. (Court Reporter N. Linnell.)(dper) (Entered: 12/18/2012) |
| 12/17/2012 | 6 | | WAIVER OF INDICTMENT by Chad Dixon (dper) (Entered: 12/18/2012) |
| 12/17/2012 | 7 | | PLEA AGREEMENT as to Chad Dixon (dper) (Entered: 12/18/2012) |
| 12/17/2012 | 8 | | Statement of Facts as to Chad Dixon (dper) (Entered: 12/18/2012) |
| 12/17/2012 | 9 | | ORDER Setting Conditions of Release as to Chad Dixon (1) $50,000 PR bond as to Chad Dixon. Signed by District Judge Liam O'Grady on 12/17/12. (dper) (Entered: 12/18/2012) |
| 03/18/2013 | | | Reset Deadlines/Hearings as to Chad Dixon: Sentencing set for 5/24/2013 at 09:00 AM in Alexandria Courtroom 700 before District Judge Liam O'Grady. (clar, ) (Entered: 03/18/2013) |
| 03/18/2013 | | | Reset Hearings as to Chad Dixon: Sentencing reset for **5/24/2013 at 09:00 AM** in Alexandria Courtroom 700 before District Judge Liam O'Grady. (jcor) (Entered: 03/19/2013) |
| 05/15/2013 | | | Terminate Deadlines and Hearings as to Chad Dixon: Reset Hearings as to Chad Dixon: |

| | | | |
|---|---|---|---|
| | | | Status Conference set for **5/24/2013 at 9:00 AM in Alexandria Courtroom 700 before District Judge Liam O'Grady**. (jcor) (Entered: 05/16/2013) |
| 08/16/2013 | 19 | | Position on Sentencing by USA as to Chad Dixon (Asonye, Uzo) (Entered: 08/16/2013) |
| 08/21/2013 | | | Reset Deadlines/Hearings as to Chad Dixon: Sentencing set for 9/6/2013 at 09:00 AM in Alexandria Courtroom 700 before District Judge Liam O'Grady. (Per LOG chambers) (clar, ) (Entered: 08/21/2013) |
| 08/23/2013 | 20 | | Position on Sentencing by Chad Dixon (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Ginsberg, Nina) (Entered: 08/23/2013) |
| 09/04/2013 | 21 | | Sealed Supplemental Position by Chad Dixon. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(jcor) (Entered: 09/05/2013) |
| 09/06/2013 | 22 | | Minute Entry for proceedings held before District Judge Liam O'Grady: Sentencing held on 9/6/2013 for Chad Dixon (1), Counts 1 and 2. USA appeared through: Anthony Phillips and Uzo Asonye. Defendant appeared with: Nina Ginsberg. Court adopts PSI. The court heard argument regarding the defendant's objections to the government's position for enhancements regarding mass marketing, sophisticated means, substantial interference with the administration of justice, and extensive in scope, planning, or preparation. The court finds the guidelines have been properly calculated by the probation officer. For the reasons stated in open court, the court departed below the guideline range pursuant to the factors set forth in 18 USC 3553(a). JUDGMENT: BOP for 8 Months as to each of Counts 1 and 2, to run concurrently; 3 Years Supervised Release on each of Counts 1 and 2, to run concurrently, and no special conditions of supervision were imposed on the defendant; $200 special assessment ($100 on each count). Consent Order of Forfeiture entered and filed in open court. The court recommends that the defendant be designated to a Federal Prison Camp close to Marion, Indiana, to be near family. The defendant shall surrender once designated by BOP as dir by PO. (Court Reporter N. Linnell.)(dper) (Entered: 09/06/2013) |
| 09/06/2013 | 23 | 20 | JUDGMENT as to Chad Dixon (1), Counts 1 and 2: BOP for 8 Months as to each of Counts 1 and 2, to run concurrently; 3 Years Supervised Release on each of Counts 1 and 2, to run concurrently; $200 special assessment ($100 on each count). Signed by District Judge Liam O'Grady on 9/6/13. (dper) (Entered: 09/06/2013) |
| 09/06/2013 | 24 | | Sealed Statement of Reasons as to Chad Dixon. Signed by District Judge Liam O'Grady on 9/6/13. (dper) (Entered: 09/06/2013) |
| 09/06/2013 | 25 | | Consent ORDER OF FORFEITURE as to Chad Dixon. Signed by District Judge Liam O'Grady on 9/6/13. (dper) (Entered: 09/06/2013) |
| 09/17/2013 | 26 | | MOTION to Amend/Correct *Sentence* by Chad Dixon. (Attachments: # 1 Exhibit 1)(Ginsberg, Nina) (Entered: 09/17/2013) |
| 09/19/2013 | 27 | | ORDER denying 26 Motion to Correct Sentence as to Chad Dixon (1). Signed by District Judge Liam O'Grady on 9/19/2013. (jcor) (Entered: 09/20/2013) |
| 09/23/2013 | 28 | | TRANSCRIPT of sentencing hearing held on 9−6−2013 before Judge O'Grady. Court reporter Norman Linnell, telephone number 703−549−4626. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have** |

| | | | |
|---|---|---|---|
| | | | **thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov**<br><br>Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/23/2013. Redacted Transcript Deadline set for 11/25/2013. Release of Transcript Restriction set for 12/23/2013.(linnell, norman) (Entered: 09/23/2013) |
| 10/04/2013 | 29 | | MOTION to Delay Self−Surrender Date by Chad Dixon. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 10/04/2013) |
| 10/07/2013 | 30 | | ORDER granting 29 Motion to continue reporting date from 10/22/13 to 11/4/13 as to Chad Dixon (1). Signed by District Judge Liam O'Grady on 10/7/13. (krob, ) (Entered: 10/07/2013) |
| 04/14/2016 | 31 | 28 | Probation Jurisdiction Transferred to Northern District of Indiana (Fort Wayne) as to Chad Dixon Transmitted Transfer of Jurisdiction form, with certified copies of indictment, judgment and docket sheet. (Attachments: # 1 Letter)(lbru, ) (Entered: 04/14/2016) |

Case 1:12-cr-00521-LO Document 4 Filed 12/17/12 Page 1 of 17 PageID# 6

DEC 1 7 2012

IN OPEN COURT

_____ DISTRICT COURT
_____ RIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:12CR **521** |
| | ) | |
| | ) | 18 U.S.C. § 1343 and 2 |
| | ) | Wire Fraud |
| | ) | (Count One) |
| v. | ) | |
| | ) | 18 U.S.C. §§ 1505 and 2 |
| | ) | Obstruction of an Agency Proceeding |
| | ) | (Count Two) |
| | ) | |
| CHAD DIXON, | ) | 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. |
| | ) | § 2461(c) |
| | ) | (Forfeiture Allegation) |
| Defendant. | ) | |

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### GENERAL ALLEGATIONS

At all times material to this criminal information:

1.    CHAD DIXON ("DIXON"), the defendant, individually owned and operated a

company that he called Polygraph Consultants of America ("PCA"). Doing business as PCA,

DIXON was hired and paid to train customers how to affect the outcome of polygraph

examinations, that is, to create polygraph chart tracings that conceal indicators of deception

when the customer is lying. DIXON's principal place of business was Marion, Indiana, where

DIXON operated PCA from his home. In November 2010, DIXON established a toll-free

telephone service for PCA, which automatically forwarded incoming telephone calls to

DIXON's personal cellular telephone.

1

2.      DIXON listed his toll-free telephone number, as well as an e-mail address at which he could be reached, on a website for PCA that DIXON created. DIXON alone received e-mail directed to the listed e-mail address. In addition to providing contact information for DIXON, the website promised prospective customers, "It makes no difference if your[sic] being truthful or bold face lying we will teach you how to produce truthfull[sic] charts guaranteed. Your personal instructor is an expert in teaching people just like you how to pass any polygraph exam. Equally important, there is no way anybody will be able to tell that you have been trained. The end result is the same every time, and that's you passing your examination guaranteed!"

3.      United States Customs and Border Protection ("CBP") is a federal law enforcement agency of the United States Department of Homeland Security charged with enforcing U.S. regulations regarding immigration, international trade, customs, and drugs. CBP's primary mission is to prevent terrorists and terrorist weapons from entering the United States and ensuring the security of our nation at America's borders and ports of entry.

4.      United States Office of Personnel Management ("OPM") conducts suitability investigations and makes determinations regarding suitability for employment in the U.S. government competitive service for certain job applicants, including applicants for CBP Protection Officer, Border Patrol Agent, and Air and Marine Interdiction Agent positions. Title 5 of the Code of Federal Regulations, Part 731 – Suitability, requires that OPM, or an agency with authority delegated from OPM, ensure that such applicants are of good character and conduct, and that employment of any such applicant would not have an adverse impact on the government. OPM delegates authority to CBP to conduct suitability determinations and security background investigations.

2

5.     In determining whether a person is suitable for federal employment, OPM and CBP consider the following factors: misconduct or negligence in employment; criminal or dishonest conduct; material, intentional false statement, or deception or fraud in examination or appointment; refusal to furnish testimony; alcohol abuse; illegal use of narcotics, drugs, or other controlled substances; knowing and willful engagement in acts or activities designed to overthrow the U.S. Government by force; any statutory or regulatory bar which prevents the lawful employment of the applicant; the nature of the position for which the person is applying; the nature, seriousness, circumstances, recency, and the applicant's age at the time of the conduct; contributing societal conditions; and the absence or presence of rehabilitation or efforts toward rehabilitation.

6.     CBP receives authority annually from OPM to conduct pre-employment polygraph examinations for law enforcement applicants as part of a statutorily mandated suitability determination and security background investigation. The Anti-Border Corruption Act of 2010 also required, in part, that by 2013 all CBP law enforcement applicants, Protection Officers, Border Patrol Agents, and Air and Marine Interdiction Agents submit to a pre-employment polygraph examination before being hired by CBP.

7.     The National Center for Credibility Assessment ("NCCA") defines countermeasures as "[a]nything which effectively negates or mitigates an adversary's ability to exploit vulnerabilities. In polygraph, (countermeasures) refers to any action(s) taken to affect the outcome of a PDD (Psychophysiological Detection of Deception) examination" including behavioral, mental, pain, pharmacological, physical and spontaneous actions.

8.     In or around March 2009, Applicant A, a New York resident, applied for the federal law enforcement position of CBP Air and Marine Interdiction Agent, a position with a

3

starting salary of approximately $57,408. CBP Air and Marine Interdiction Agent applicants are subject to pre-employment polygraph examinations administered by CBP's Office of Internal Affairs, Credibility Assessment Division ("IA-CAD"), in accordance with federal laws and regulations.

### COUNT ONE
### (Wire Fraud)

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

9. The allegations contained in paragraphs 1 through 8 of this criminal information are realleged as if fully set forth herein.

A. THE SCHEME AND ARTIFICE TO DEFRAUD

10. From in or around November 2010 through in or around April 2012, in the Eastern District of Virginia and elsewhere, the defendant, CHAD DIXON, and others, aided and abetted by each other, did knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

B. THE PURPOSE OF THE SCHEME AND ARTIFICE TO DEFRAUD

11. The purpose of the scheme was for DIXON to enrich himself by training federal job applicants and federal employees, among others, in polygraph countermeasures and assisting them in deceiving the federal government in exchange for money.

12. A further purpose of the scheme was to defraud the United States and obtain and maintain federal employment for DIXON's customers through materially false and fraudulent statements and representations, as well as through the use of polygraph countermeasures.

C. MANNER AND MEANS OF THE SCHEME

13. DIXON, through his website, advertised customized training sessions in

4

polygraph countermeasures that guaranteed a customer would pass "any polygraph examination in the world" even if the customer lied during the examination.

14.    DIXON provided private polygraph countermeasures training sessions to his customers, including applicants for federal law enforcement positions, either by traveling to the customer or providing the training near DIXON's hometown.

15.    In order to customize the polygraph countermeasures training, DIXON solicited and learned information from his customers, separately and individually, regarding the purpose of the polygraph examination and the information each customer needed, wanted, or intended to conceal during the polygraph examination.

16.    In order to manipulate the natural outcome of polygraph examinations, conceal material information, and facilitate false statements his customers intended to make during polygraph examinations, DIXON taught his customers physical and mental countermeasures designed to defeat, disrupt, and obstruct polygraph examinations administered by various departments or agencies of the United States, including CBP and other federal agencies within the U.S. intelligence community.

17.    In order to aid the concealment of his customers' false statements, and to help his customers obtain federal employment fraudulently, DIXON instructed his customers to lie and deny receiving polygraph countermeasures training.

18.    DIXON was paid approximately $1,000 per day, plus travel expenses, to train his customers in the use and application of polygraph countermeasures.

19.    During pre-employment polygraph examinations administered by CBP, DIXON's customers used countermeasures learned from DIXON to conceal material information. Further,

5

as instructed by DIXON, DIXON's customers falsely stated that they had not received countermeasures training.

20.     DIXON provided private polygraph countermeasures training to nine convicted sex offenders who are currently under state court-ordered supervision, either probation or parole, and who were mandated to take polygraphs as a condition of their supervision while residing in their communities.

21.     Furthermore, DIXON provided private polygraph countermeasures training to two federal contractors holding security clearances: a 48-year-old contractor to a federal agency within the U.S. intelligence community, who currently possesses a Top Secret/Sensitive Compartmented Information security clearance; and a 46-year-old contractor with a Top Secret security clearance, who has been employed by the U.S. Drug Enforcement Agency,and Federal Deposit Insurance Corporation.

D.     ACTS IN FURTHERANCE OF THE SCHEME TO DEFRAUD

In furtherance of the scheme to defraud, DIXON and others committed and caused to be committed the following acts, among others, in the Eastern District of Virginia and elsewhere:

22.     On or about April 13, 2011, in order to gain information about the services offered by DIXON's company, PCA, Applicant A placed a telephone call to the toll-free number listed on PCA's website and spoke with DIXON.

23.     On or about April 13, 2011, DIXON and Applicant A agreed to meet in Indianapolis, Indiana. Applicant A purchased plane tickets to and from Indianapolis, Indiana, using Applicant A's MasterCard credit card.

24.     On or about April 18, 2011, DIXON met Applicant A at a hotel in Indianapolis, Indiana, where he taught Applicant A physical and mental polygraph countermeasures. DIXON

6

also provided Applicant A with training materials titled "ALWAYS PASS EVERY TIME NO MATTER WHAT."

25.     On or about April 18, 2011, after Applicant A advised DIXON that he had applied for a position with CBP and was required to take a pre-employment polygraph examination, DIXON revealed to Applicant A that he had provided polygraph countermeasures to other government job applicants.

26.     On or about April 18, 2011, during an approximately eight-hour training session, DIXON taught Applicant A physical and mental polygraph countermeasures that DIXON knew would be used corruptly to influence, obstruct, and impede the CBP pre-employment polygraph examination that Applicant A was required to take, and that were designed to allow Applicant A to conceal lies and false statements.

27.     On or about April 18, 2011, DIXON instructed Applicant A, if he was asked, to deny receiving polygraph countermeasures training.

28.     On or about April 18, 2011, DIXON received approximately $1,050 from Applicant A for the polygraph countermeasures training, which was paid for using Applicant A's MasterCard credit card.

29.     On or about April 19, 2011, Applicant A participated in a pre-employment polygraph examination at a CBP office in Buffalo, New York, as part of a CBP suitability determination and security background investigation. Before the pre-employment polygraph examination, the CBP polygraph examiner advised Applicant A not to attempt to manipulate information collected during the polygraph examination and warned Applicant A that any attempt to manipulate the examination could result in termination of the polygraph examination process.

7

30.     On or about April 19, 2011, Applicant A used physical and mental countermeasures while taking a pre-employment polygraph examination in a corrupt endeavor to influence, obstruct, and impede the examination.

31.     On or about April 19, 2011, during his pre-employment polygraph examination, Applicant A concealed the fact that he received polygraph countermeasures training from DIXON the previous day and falsely stated to the CBP examiner that Applicant A had not conducted research, reviewed any training materials, or received training on polygraph countermeasures.

32.     On or about April 20, 2011, DIXON and Applicant A caused CBP to transmit by wire Applicant A's pre-employment polygraph examination report from a CBP computer in Buffalo, New York, to CBP servers in Newington, Virginia, within the Eastern District of Virginia.

## First Undercover Operation in Arlington, Virginia

33.     On or about November 23, 2011, DIXON told a CBP Special Agent ("UC1"), acting in an undercover capacity as a CBP Protection Officer applicant, that he provides an 8-hour, one-day training course that enables an individual to produce polygraph chart tracings that conceal indicators of deception, using behavioral, physical, and mental exercises, regardless of whether an individual is lying or not.  Explaining that he would teach UC1 "what to say" and "what not to say," DIXON said that 14,311 individuals had received his training program and none of them had failed their polygraph examination.

34.     On December 2, 2011, DIXON told UC1 that DIXON offered a training program designed for Department of Defense Polygraph Institute pre-employment examinations.  UC1 advised DIXON that UC1 applied for a federal Customs and Border Protection Officer position.

8

DIXON agreed to travel to Arlington, Virginia, to meet with UC1 for polygraph countermeasures training.

35.     During a subsequent telephone conversation on December 2, 2011, DIXON said that he would teach UC1 to produce a truthful polygraph chart tracing even if the answer was ridiculous. For example, according to Dixon, UC1 could answer, "Yes," to the question, "Did you fly an airplane into the World Trade Center on 9/11?" and still produce a truthful polygraph chart tracing.

36.     On or about December 9, 2011, DIXON met UC1 at a hotel in Arlington, Virginia, for polygraph countermeasures training. DIXON met UC1 in the hotel lobby and escorted UC1 to a guest room in the hotel, where the training was conducted.

37.     During the polygraph countermeasures training provided on or about December 9, 2011, UC1 told DIXON that UC1 had to "beat" the polygraph examination and needed DIXON to teach UC1 how to lie to gain employment with CBP. DIXON provided UC1 with a training packet titled, "ALWAYS PASS EVERY TIME NO MATTER WHAT."

38.     During the training session, UC1 told DIXON that UC1 currently used illegal drugs and did not disclose this information on UC1's security background investigation forms or during UC1's security background interview. DIXON instructed UC1 not to reveal UC1's current criminal drug activity. DIXON also instructed UC1 to state falsely that UC1 had only used illegal drugs more than eight years ago.

39.     Further, UC1 told DIXON that, while previously employed as a "jailer" in a Texas prison, UC1 accepted bribes to smuggle contraband to inmates. UC1 told DIXON that, while under investigation for that conduct, UC1 resigned from the prison before being

9

terminated or prosecuted. UC1 told DIXON that UC1 did not disclose this information on UC1's security background investigation forms or during UC1's security background interview.

40.     DIXON told UC1 that if CBP learned of UC1's undisclosed employment circumstances and resignation, UC1 would not be hired by CBP. DIXON instructed UC1 not to reveal UC1's past criminal activities at the Texas prison.

41.     During the training session, DIXON taught UC1 behavioral, physical, and mental polygraph countermeasures designed to defeat and disrupt CBP's pre-employment polygraph examination.

42.     UC1 paid DIXON a total of approximately $2,800 for the polygraph countermeasures training. DIXON demanded a $1,000 down payment which UC1 provided in the form of a U.S. Postal Money Order, and the remaining $1,800 in cash paid at the training session.

*Second Undercover Operation in Alexandria, Virginia*

43.     On or about March 1, 2012, DIXON agreed to travel to Alexandria, Virginia, to provide polygraph countermeasures training to a state law enforcement officer ("UC2"), who was acting in an undercover capacity as a CBP Border Patrol Agent applicant.

44.     On March 9, 2012, DIXON met UC2 at a hotel in Alexandria, Virginia, for countermeasures training. UC2 told DIXON that UC2 was concerned about omitting requested information from UC2's security background investigation forms. Specifically, UC2 told DIXON that UC2's brother ("Brother"), with whom UC2 had a close relationship, was a Mexican citizen and a member of Los Zetas drug cartel involved in murder, robbery, and extortion. UC2 explained to DIXON that UC2 deliberately failed to list Brother on the security background investigation forms and had previously loaned Brother UC2's U.S. Passport in order

10

for Brother to enter the United States from Mexico illegally. Additionally, UC2 told DIXON that, in Mexico, UC2 had sexual intercourse with a minor.

45.     DIXON told UC2 that if CBP was aware that Brother was a member of the Los Zetas cartel, UC2 would not be hired by CBP. Additionally, DIXON said that he was not concerned about UC2's sexual contact with a minor because the minor was not DIXON's child.

46.     On or about March 9, 2012, DIXON provided UC2 with a training packet titled "ALWAYS PASS EVERY TIME NO MATTER WHAT." DIXON's training packet directed law enforcement applicants, "Do not tell the polygrapher anything that isn't already a matter of record and certainly do not admit to anything that could disqualify you."

47.     On or about March 9, 2012, DIXON instructed UC2 to make a material false statement to his polygraph examiner if asked about Brother during the pre-employment polygraph examination. Despite learning that UC2 had frequent contact and maintained a close relationship with Brother, DIXON directed UC2 that if he was confronted about his relationship to Brother that UC2 should lie and claim that UC2 omitted Brother from the security background investigation forms because UC2 had limited contact with Brother and did not consider him a true relative.

48.     During the approximately seven-hour training session, DIXON instructed UC2 in behavioral, physical, and mental polygraph countermeasures designed to defeat and disrupt the CBP pre-employment polygraph examination.

49.     At the conclusion of the training session, UC2 paid DIXON approximately $2,500 in cash, which was in addition to approximately $1,000 UC2 previously sent DIXON by a Western Union wire transfer. UC2 told DIXON that the payment for the polygraph

11

countermeasures training was provided by Brother, the member of Los Zetas Drug Cartel. DIXON told UC2 to "thank your brother" for the payment.

50.     On March 12, 2012, a CBP Special Agent posing as UC2 sent an e-mail to DIXON asking how to respond to certain questions that would be asked by CBP during the pre-employment polygraph examination. Three days later, DIXON answered the e-mail, advising UC2 to utilize polygraph countermeasures in response to each of the questions asked in the March 12, 2012, email.

51.     On March 20, 2012, UC2 told DIXON by e-mail that UC2 passed the CBP pre-employment polygraph examination and had a friend who wanted to contact DIXON concerning polygraph countermeasures training. DIXON responded that UC2 could provide the friend with DIXON's cellular telephone number and email.

E.     INTERSTATE WIRE COMMUNICATION

52.     On or about December 8, 2011, within the Eastern District of Virginia and elsewhere, DIXON, for the purpose of executing the scheme and artifice described above, knowingly caused to be transmitted by wire communications in interstate commerce an e-mail sent from Arlington, Virginia, to Indiana containing the name, address, and telephone number of the hotel where UC1 and DIXON would meet for the polygraph countermeasures training.

(All in violation of Title 18, United States Code, Sections 1343 and 2)

12

## COUNT TWO
### (Obstruction of an Agency Proceeding)

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

53.     The allegations contained in paragraphs 1 through 8 and 11 through 52 of this criminal information are realleged as if fully set forth herein.

54.     Between on or about April 13, 2011, and on or about April 18, 2012, in the Eastern District of Virginia and elsewhere, the defendant, CHAD DIXON, and others, aided and abetted by each other, did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of the law under which a proceeding was pending before U.S. Customs and Border Protection of the Department of Homeland Security, an agency of the United States, in that DIXON taught Applicant A physical and mental countermeasures designed to conceal material false statements and to disrupt and defeat a federal law enforcement pre-employment polygraph examination conducted as part of a statutorily mandated pre-employment suitability determination and security background investigation, and DIXON instructed Applicant A to lie about receiving polygraph countermeasures training, with knowledge that the question of whether Applicant A received polygraph countermeasures training was material to the examination being conducted by U.S. Customs and Border Protection of the Department of Homeland Security.

(All in violation of Title 18, United States Code, Sections 1505 and 2)

13

## CRIMINAL FORFEITURE

55.     The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

56.     Pursuant to Rule 32.2(a), the defendant, CHAD DIXON, is hereby notified that, upon conviction of the offense in Count 1 in violation of Title 18, United States Code, Section 1343, he shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the following property:

(a)     A sum of money equal to at least $17,091.07 in United States currency, representing the amount of proceeds obtained as a result of the violations of 18 U.S.C. § 1343;

(b)     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by 28 U.S.C. § 2461(c), the defendant shall forfeit substitute property, up to the value of the amount described in subparagraph a, if, by any act or omission of the defendant, the property described in subparagraph c, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); and Rule 32.2(a), Federal Rules of Criminal Procedure.)

14

Respectfully submitted,

Neil H. MacBride
United States Attorney
Eastern District of Virginia

By: _____
Uzo E. Asonye
Assistant United States Attorney

Jack Smith
Chief, Public Integrity Section
United States Department of Justice

By: _____
Eric L. Gibson
Anthony O. Phillips
Trial Attorneys

15



## UNITED STATES DISTRICT COURT
### Eastern District of Virginia
Alexandria Division

SEP - 6 2013

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA
        v.

Case Number:   1:12CR00521-001

CHAD DIXON

USM Number:  81406-083

Defendant's Attorney:   Nina J. Ginsberg, Esquire

Defendant.

## JUDGMENT IN A CRIMINAL CASE

The defendant pleaded guilty to Counts 1 and 2 of the Criminal Information.

Accordingly, the defendant is adjudicated guilty of the following counts involving the indicated offenses.

| Title and Section | Nature of Offense | Offense Class | Offense Ended | Count |
|---|---|---|---|---|
| 18 U.S.C. § 1343 and 2 | Wire Fraud | Felony | In or around April 2012 | 1 |
| 18 U.S.C. § 1505 and 2 | Obstruction of an Agency Proceeding | Felony | April 18, 2012 | 2 |

As pronounced on September 6th, 2013, the defendant is sentenced as provided in pages 2 through 6 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

Signed this 6th day of September, 2013.

Liam O'Grady
United States District Judge

Defendant's Name:  **DIXON, CHAD**
Case Number:       **1:12CR00521-001**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of EIGHT (8) MONTHS as to each of Counts 1 and 2, to run concurrently.

The Court makes the following recommendations to the Bureau of Prisons:
1) that the defendant be designated to a Federal Prison Camp close to Marion, Indiana, to be near family.

The defendant shall surrender for service of the sentence once designated by the Bureau of Prisons as directed by the U.S. Probation Office.

# RETURN

I have executed this judgment as follows: _____

_____

Defendant delivered on _____ to_____
at_____, with a certified copy of this Judgment.


                                          _____
                                          UNITED STATES MARSHAL


                              By          _____
                                          DEPUTY UNITED STATES MARSHAL

| Defendant's Name: | DIXON, CHAD |
|---|---|
| Case Number: | 1:12CR00521-001 |

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of THREE (3) YEARS as to each of Counts 1 and 2, to run concurrently.

The Probation Office shall provide the defendant with a copy of the standard conditions and any special conditions of Supervised Release.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and periodic drug tests thereafter, as determined by the court.

The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or restitution obligation, it is a condition of Supervised Release that the defendant pay any such fine or restitution in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

## STANDARD CONDITIONS OF SUPERVISION

The defendant shall comply with the standard conditions that have been adopted by this court set forth below:

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance or any paraphernalia related to such substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer for a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 09/11) Judgment in a Criminal Case
Sheet 3A – Supervised Release

| Defendant's Name: | DIXON, CHAD |
|---|---|
| Case Number: | 1:12CR00521-001 |

## SPECIAL CONDITIONS OF SUPERVISION WERE NOT IMPOSED ON THE DEFENDANT

| Defendant's Name: | DIXON, CHAD |
| Case Number: | 1:12CR00521-001 |

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the Schedule of Payments on Sheet 6.

| | Count | Assessment | Fine | Restitution |
|---|---|---|---|---|
| | 1 | $100.00 | $0.00 | $0.00 |
| | 2 | $100.00 | $0.00 | $0.00 |
| **TOTALS:** | | **$200.00** | **$0.00** | **$0.00** |

## FINES

No fines have been imposed in this case.
The court waives the cost of prosecution, incarceration, and supervised release.

AO 245B (Rev. 09/11) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

Case 1:12-cr-00521-LO Document 23 Filed 09/06/13 Page 6 of 9 PageID 219 Case 1:12-cr-00521-LO Document 32 Filed 04/14/16 Page 25 of 29 PageID# 314

Defendant's Name: **DIXON, CHAD**
Case Number: **1:12CR00521-001**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

The special assessment shall be due in full immediately.

The defendant shall forfeit the defendant's interest in the following property to the United States:

SEE attached Consent Order of Forfeiture entered by the Court on September 6, 2013.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the Clerk of the Court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed. Payments shall be applied in the following order: (1) assessment (2) restitution principal (3) restitution interest (4) fine principal (5) fine interest (6) community restitution (7) penalties and (8) costs, including cost of prosecution and court costs.

Nothing in the court's order shall prohibit the collection of any judgment, fine, or special assessment by the United States.

IN OPEN COURT

SEP - 6 2013

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:12CR521 |
| | ) | |
| CHAD DIXON, | ) | |
| | ) | |
| Defendant. | ) | |

<u>CONSENT ORDER OF FORFEITURE</u>

WHEREAS, on December 17, 2012, Defendant Chad Dixon pled guilty to a two-count

criminal information that included charging the defendant with wire fraud (Count One), in

violation of Title 18, United States Code, Sections 3143 and 2, and pursuant to the defendant's

plea, the defendant agreed to forfeit all of the defendant's interests in the property that is the

subject of this order of forfeiture, and to the entry of an order of forfeiture concerning such

property;

AND WHEREAS, the defendant agrees to waive the provisions of Federal Rules of

Criminal Procedure 11(b)(1)(J), 32.2(a), 32.2(b)(4) and 43(a) with respect to discussion of

forfeiture at the plea colloquy, notice of forfeiture in the charging instrument, and announcement

of the forfeiture at sentencing and incorporation of the forfeiture in the judgment;

NOW, THEREFORE, IT IS HEREBY ORDERED ADJUDGED AND DECREED

THAT:

1. The defendant forfeits to the United States the judgment sum of $17,091.07 representing

the proceeds that the defendant obtained from the conduct to which the defendant pled guilty,

pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Fed. R. Crim. P. 32.2(b)(2):

U.S. v. Dixon, 1:12CR521
Consent Order of Forfeiture
Page **2** of **2**

2. This forfeiture order is final as to the defendant, pursuant to Fed. R. Crim. P.

32.2(b)(4)(A).

3. The United States may move at any time, pursuant to Fed. R. Crim. P. 32.2(e), to amend

this Consent Order of Forfeiture to forfeit substitute property to satisfy the money judgment in

whole or in part.

Date: Sept 5, 2013
Alexandria, Virginia

/s/ _____
Liam O'Grady
United States District Judge
United States District Court Judge

WE ASK FOR THIS:

For the United States of America, plaintiff

Neil H. MacBride
United States Attorney

By: _____
Uzo Asonye
Assistant United States Attorney

Jack Smith
Chief, Public Integrity Section
United States Department of Justice

By: _____
Anthony J. Phillips
Eric L. Gibson
Trial Attorneys

For Chad D. Dixon, defendant

_____
Chad D. Dixon
Defendant

_____
Nina J. Ginsberg, Esq.
Counsel for the Defendant

| PROB 22 (Rev. 09/12) **TRANSFER OF JURISDICTION** | DOCKET NUMBER *(Tran. Court)* 1:12CR00521- 1 | |
|---|---|---|
| | DOCKET NUMBER *(Rec. Court)* 1:16-CR-14 | |

| NAME AND ADDRESS OF PROBATION / SUPERVISED RELEASEE | DISTRICT | DIVISION |
|---|---|---|
| Chad Dixon | Eastern Virginia | Alexandria |
| | NAME OF SENTENCING JUDGE The Honorable Liam O'Grady | |

| | DATES OF SUPERVISION | FROM 7/2/2014 | TO 7/1/2017 |
|---|---|---|---|

**OFFENSE**

18 U.S.C. § 1343 and 2      Wire Fraud

18 U.S.C. § 1505 and 2      Obstruction of an Agency Proceeding

---

**PART 1 – ORDER TRANSFERRING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

**IT IS HEREBY ORDERED** that, pursuant to 18 U.S.C. §3605, the jurisdiction of the probationer or supervised releasee named above be transferred with the records of this Court to the United States District Court for the Northern District of Indiana – Fort Wayne Division upon that Court's Order of Acceptance of Jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this Court.*

March 18, 2016
_____
Date

/s/ [signature]
_____
Liam O'Grady United States District Judge
United States District Judge

*This sentence may be deleted at the discretion of the transferring Court.

---

**PART 2 – ORDER ACCEPTING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA

**IT IS HEREBY ORDERED** that jurisdiction over the above-named probation or supervised releasee be accepted and assumed by this Court from and after the entry of this Order.

April 11, 2016
_____
Effective Date

s/ Theresa L. Springmann
_____
United States District Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

Robert N. Trgovich, Clerk

www.innd.uscourts.gov

Apr 11, 2016

Clerk, U.S. District Court
401 Courthouse Square, 2nd Floor
Alexandria, VA 22314-5704

RECEIVED
MAILROOM

APR 14 2016

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

RE:   Name of Defendant: Chad Dixon
      Our Case Number: 1:16-CR-14 TLS
      Your Case Number: 1:12-CR-00521-1

Dear Clerk:

**Initial Transfer Out**

☐   Enclosed please find Probation Form 22 initiating the Transfer of Jurisdiction to your district. Please return a certified original to this office after jurisdiction accepted. Upon receipt, we will forward certified copies of the pertinent documents to you, or advise you how you may obtain them.

**Final Transfer Out**

☐   Enclosed please find certified copies of Probation Form 22 transferring the jurisdiction from the Northern District of Indiana to your District, charging document, Judgment & Commitment Order, Docket Sheet and Financial Case Ledger.
                              or
☐   Enclosed please find certified copies of Probation Form 22 transferring the jurisdiction from the Northern District of Indiana to your District, along with a copy of the Financial Case Ledger. Copies of the docket, charging instrument and judgment may by obtained via pacer from www.innd.uscourts.gov

**Transfer In**

☒   Enclosed please find Probation Form 22 (certified) indicating that our court has accepted jurisdiction. Please forward certified a Financial Case Ledger and copies of the charging document (complaint/ indictment), Judgment & Commitment Order, Docket Sheet or advise us if these documents are accessible via pacer.

Sincerely,

ROBERT N. TRGOVICH, CLERK

By: s/C. Reed   (260) 423-3000

1108 E. Ross Adair Federal Bldg. • 1300 S. Harrison Street • Fort Wayne, Indiana 46802 • (260) 423-3000 • Fax (260) 423-3007
5400 Federal Plaza • Suite 2300 • Hammond, Indiana 46320 • (219) 852-6500 • Fax (219) 852-6509
102 Robert A. Grant Federal Bldg. • 204 South Main Street • South Bend, Indiana 46601 • (574) 246-8000 • Fax (574) 246-8002
214 Charles Halleck Federal Bldg. • 230 North Fourth Street • Room 105• Lafayette, Indiana 47902 • (765) 420-6250 • Fax (765) 420-6314